IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SKINNNER PILE DRIVING, INC., | ) | |
|     Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 14-00329-N |
| | ) | |
| ATLANTIC SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
|     Defendant/Counter Claimant. | ) | |

## ORDER

This action is before the Court on the Motion for Leave to Intervene (Doc. 20) filed by Natures Way Marine, LLC ("Natures Way") pursuant to Federal Rule of Civil Procedure 24.  Though given the opportunity (*see* Doc. 21), no party has filed opposition to the motion.  With the consent of the parties (Doc. 4), this action has been referred to the undersigned Magistrate Judge to conduct all proceedings in this action, including trial; to order entry of final judgment; and to conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (*See* Doc. 5).

## I.     Background

This action involves an insurance coverage dispute arising from an incident in which a Linkbelt Crane attached to a barge was damaged while the crane and barge were in the custody and control of Plaintiff Skinner Pile Driving, Inc. ("Skinner").  Skinner sought coverage for the damage to the crane under its policy of insurance with Defendant Atlantic Specialty Insurance Company ("Atlantic").  After Atlantic denied the claim, Skinner filed the present action against Atlantic, alleging

breach of contract, fraud, misrepresentation, deceit, and bad faith.  Atlantic filed a counterclaim for declaratory judgment as to the rights, remedies, obligations, and liabilities of Skinner and Atlantic under the subject insurance policy, claiming that it owes no coverage for damage to the crane due to certain exclusions in the insurance policy.  (*See* Doc. 1-1; Doc. 2; Doc. 15 at 2-3).

In its motion to intervene (Doc. 20), Natures Way asserts that it is the owner of the damaged crane and barge, which it had chartered to Skinner for use in a project in Florida, during which the damage allegedly occurred.  Natures Way has demanded that Skinner pay for the damages to the crane, but Skinner has refused, citing an inability to pay "and/or" its intention to seek coverage for the damage under its insurance policy with Atlantic.  In its proposed Complaint in Intervention (Doc. 20-1), Natures Way asserts only a breach of contract claim against Skinner, alleging that "Skinner breached its duties under the Charter Agreement by (a) failing and refusing to pay monies due for the hire of the Barge and Crane, and b) failing and refusing to pay monies due for the damage to the Crane."  Natures Way demands $60,000 for "unpaid charter hire" and $30,715 for the cost of repairs to the crane.  Natures Way asserts no claim against Atlantic.  Natures Way argues that it is entitled to both intervention of right under Rule 24(a) and permissive intervention under Rule 24(b).

## II.     Intervention of Right under Rule 24(a)

Rule 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who[] claims an interest relating to the property or transaction

that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[1]  "Rule 24(a)(2) requires a third party moving for intervention of right show:[] '(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.' " *Huff v. Comm'r of IRS*, 743 F.3d 790, 795-96 (11th Cir. 2014) (quoting *Fox v. Tyson Foods, Inc.,* 519 F.3d 1298, 1302–03 (11th Cir. 2008) (quoting *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989))) (internal citation omitted).  "Intervention of right is only available if the interest asserted is 'direct, substantial, [and] legally protectable.'  In other words, 'the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding.' "  *Id.* at 796 (quoting *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (citations omitted)).[2]  "In deciding whether a party has a protectable

---

[1] Natures Way does not argue that it has "an unconditional right to intervene by a federal statute[,]" nor is the undersigned aware of any such right.  Fed. R. Civ. P. 24(a)(1).

[2] *See also In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006):

> [B]oth Rule 24(a) and Rule 24(b) require the prospective intervenor to anchor its request in the dispute giving rise to the pending lawsuit. The prospective intervenor must demonstrate "an interest relating to the property or transaction which is *the subject of the action*" if relying on Rule 24(a), or it must show that its "claim or defense and *the main action* have a question of law or fact in common" if relying on Rule 24(b). In either case, the plain language of Rule 24 requires the intervenor's interest to be based on the action pending before the court. *See Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.,* 425 F.3d 1308, 1312 (11th Cir. 2005)

interest,…courts must be 'flexible' and must 'focus[ ] on the particular facts and circumstances' of the case." *Id.* (quoting *Chiles*, 865 F.2d at 1214).

The Court finds that Natures Way has not shown entitlement to intervene of right because it has not demonstrated a direct, substantial, and legally protectable interest "in the transaction which is the subject of this action" – the insurance policy between Skinner and Atlantic.   Natures Way, noting that "[t]he issue of how the damage occurred – which is a threshold question to whether or not insurance coverage exists – will be decided in this lawsuit[,]" argues that "[c]ertainly, the owner of property has a sufficiently protectable interest in participating in such determination."  (Doc. 20 at 4).  In support of this proposition, Natures Way cites *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970),[3] in which the former Fifth Circuit held: "We do not believe…that the interest[ in the subject of the action] has to be of a legal nature identical to that of the claims asserted in the main action…All that is required by the terms of [Rule 24(a)(2) is an interest in the property or other rights that are at issue, provided the other elements of intervention are present."  427 F.2d at 1124.

---

(per curiam) (upholding district court's denial of a motion for permissive intervention because the purpose of intervention was unrelated to the issues presented by the underlying suit); *S. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002) (holding that Rule 24(a) requires a relationship between the intervenor's legally protectable interest in the suit and the plaintiff's claims, and that such a relationship exists "if the resolution of the plaintiff's claims actually will affect the applicant").

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

*Diaz*, however, is distinguishable.  In *Diaz*, the United States government "intervened…because it wanted to assert a lien (unrelated to the underlying issues) on a fund before the court."  *Id.*  In finding that the government properly intervened of right under Rule 24(a)(2), the court stated: "[T]he Government in this case is asserting a tax lien, clearly a legally cognizable interest in property, which it seeks to attach to a res that is before the court.  Interests in property are the most elementary type of right that Rule 24(a) is designed to protect…We hold that the Government is asserting an interest in the property that is the subject of the suit within the meaning of Rule 24(a)."  *Id.*

Natures Way has asserted no "legally cognizable interest" similar to the government's tax lien in *Diaz* (e.g., a judgment against Skinner for damages to the crane).  Indeed, in upholding the government's intervention in *Diaz*, the court rejected application of cases cited by the appellants because they were "cases in which intervention was denied because the interest was speculative or had no legally protectable nature."  *Id.* at 1124 & n.2.  As to this line of reasoning, the Court finds *Mt. Hawley Insurance Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (per curiam), to be on point.

There, an insurer, Mt. Hawley, filed a declaratory judgment action against two insured property owners, claiming that it had no duty to defend or indemnify the insureds under the subject policy for a drowning death occurring on the insureds' property.  *See Mt. Hawley Ins.*, 425 F.3d at 1309-10.  After the property owners failed to respond to the declaratory judgment action and the insurer had

moved for default judgment, Andre Rigaud, the personal representative for the decedent, who prior to the declaratory judgment action had filed a wrongful death action against the insureds, filed a motion to intervene in the declaratory judgment action under both Rule 24(a) and Rule 24(b), attempting to argue that Mt. Hawley should not be able to deny coverage.  *See id.*  The Eleventh Circuit, affirming the district court's denial of the motion to intervene of right, rejected the personal representative's argument that he had "a direct, substantial, and legally protectable interest in the subject matter of the declaratory action because if Mt. Hawley owes neither a defense nor coverage to [the insureds], then Rigaud 'will not have [a] pool or fund from which to recover his damages.' "  *Id.* at 1311.  In so doing, the Eleventh Circuit stated:

> This Court has held that a legally protectable interest "is something more than an economic interest." *United States v. South Fla. Water Mgmt. Dist.,* 922 F.2d 704, 710 (11th Cir. 1991) (quotation marks and citation omitted). "What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Id.* (quotation marks and citation omitted). Thus, a legally protectable interest is an interest that derives from a legal right.

> In this case, Rigaud's interest in the subject matter of the declaratory action is purely economic. Rigaud is not a party to the Mt. Hawley insurance policy and has no legally protectable interest in that insurance policy.  Rigaud fails to cite any *legally* protectable interest and states only that there will be less money available from which he can recover his wrongful death damages if Mt. Hawley is released from defending and providing coverage to Muria International and Sandy Lake Properties. Further, Rigaud's interest is purely speculative because it is contingent upon his prevailing against Muria International and Sandy Lake Properties in the wrongful death action.

6

*Id.* (footnote omitted).[4]  *Accord Canal Indem. Co. v. Dueitt*, Civil Action No. 10-0526-WS-B, 2011 WL 335166, at *1 (S.D. Ala. Jan. 31, 2011) (Steele, C.J.) ("An injured party has no legally protected interest in an insurance policy to which it is not a party; its economic interest in having proceeds from a tortfeasor's insurance policy available to satisfy any judgment does not satisfy this standard." (citing *Mt. Hawley Ins.*, 425 F.3d at 1311))

---

[4] In reaching this holding, the *Mt. Hawley* court noted:

> Although there is no case directly on point from this Court, several district courts from our circuit have addressed whether an interest contingent upon the outcome of other pending litigation is a legally protectable interest, and relying on this Court's decision in *South Florida Water Management,* those district courts have decided the issue the same way we do today.

> For example, in *Ace American Insurance Co. v. Paradise Divers, Inc.,* 216 F.R.D. 537, 538 (S.D. Fla. 2003), the dispute between the insurer and Paradise Divers was whether the insurance policy provided coverage to Paradise Divers for liability arising out of work-related injuries sustained by employee Kevin Upmal. The district court, relying on *South Florida Water Management,* determined that Upmal's interests were both speculative and purely economic. Specifically, the district court stated: "Here, Upmal's interests, while certainly not unimportant, are affected only speculatively, and at that only economically, by the present action. Upmal's possessing a stake in this action is contingent on first obtaining a judgment against Paradise Divers and not based on a legally protected ground." *Id.* at 539; *see also HealthSouth Corp. Ins. Litig.,* 219 F.R.D. 688, 692 (N.D. Ala. 2004) ("Here, Movants' interest in securing a pool of insurance money to draw upon is not only purely economic, but also theoretical, considering no judgments have been obtained against the insureds."); *Midwest Employers Cas. Co. v. East Ala. Health Care,* 170 F.R.D. 195, 198 (M.D. Ala.1996) (recognizing movant's interest in insurance proceeds and in the outcome of the declaratory action, but stating that the interest "does not rise to the level of a significant interest"). *But see TIG Speciality Ins. Co. v. Financial Web.com, Inc.,* 208 F.R.D. 336, 338 (M.D. Fla.2002) ("[I]f this Court declares that the insurance policy is void in the present suit, a significant source of recovery for the intervenors would become extinct; therefore, the Court finds that the intervenors have a direct, significant legal interest in the insurance policy.").

425 F.3d at 1311 n.6.

Here, it is the insured, Skinner, who initiated this action, claiming breach of an insurance contract and related torts against its insurer, Atlantic, who counterclaimed for declaratory judgment.  Nevertheless, in essence this action, like *Mt. Hawley*, "involve[s] an insurance coverage dispute."  *Id.* at 1310.   Like the would-be intervenor in *Mt. Hawley*, Natures Way has not claimed it is a party to the Atlantic insurance policy and has not claimed a legally protectable interest in that policy (e.g., additional named insured; third-party beneficiary status).   Rather, Natures Way's interest in the subject matter of this action is "purely economic" – that is, there may be "less money available from which [it] can recover" on its claims against Skinner for breach of the charter agreement and the damage to the crane.[5] Moreover, Natures Way's interest in the outcome of this action is "purely speculative," as it is "contingent upon [its] prevailing against" Skinner on its own breach of contract and/or property damage claims.   Indeed, Natures Way's Complaint in Intervention appears to seek to use this action as a vehicle to litigate those very issues, which are based on a contract entirely separate from and independent of the insurance policy currently at issue.[6]

---

[5] Natures Way acknowledges as much, claiming it has shown "a 'vital interest' in the outcome of the instant matter[ because] Skinner has already indicated an inability to pay for damages to the crane absent insurance coverage."  (Doc. 20 at 5).

[6]    Natures Way has also cited *Hartford Accident and Indemnity Co. v. Crider*, 58 F.R.D. 15 (N.D. Ill. 1973), in which the district court, relying generally on *Diaz, inter alia*, found that an intervenor had a "clearly apparent" interest in an action justifying intervention of right in an insurance declaratory judgment action because the action would "determine whether [the] insurance policy extends to cover [the intervenor]'s claim against [the insured]."  *Crider*, however, is not controlling authority and appears inconsistent with the reasoning of *Mt. Hawley*, which is controlling authority.

In reaching its determination, *Crider* also cited, generally, to *Martin v. Travelers Indemnity Co.*, 450 F.2d 542 (5th Cir. 1971).  In *Martin*, the former Fifth Circuit held that a

Because Natures Way has not demonstrated it has an interest relating to the property or transaction which is the subject of this action, *Huff*, 743 F.3d at 795, the Court need not decide whether the other factors for intervention of right are satisfied, and Natures Way's motion to intervene (Doc. 20) is due to be **DENIED** as to its request for intervention of right under Rule 24(a).

### III.   Permissive Intervention under Rule 24(b)

Under Rule 24(b)(1)(B), "[o]n timely motion, the court may permit anyone to intervene who[] has a claim or defense that shares with the main action a common question of law or fact."[7]   "In exercising this discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  *See also Mt. Hawley Ins.*, 425 F.3d at 1312 (" 'Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.' " (quoting *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002))).  "[W]hen the grounds for denying coverage are irrelevant to the issues in the underlying action, there is no common question of law or fact…"  *Reed v. Barnett*, Civil Action No. 09-0200-WS-N, 2010 WL

---

driver claiming insured status under a vehicle owner's liability insurance policy was properly allowed to intervene in the injured parties' suit against owner's insurer.  Here, Natures Way's Complaint in Intervention asserts no claim based on the subject insurance policy, instead attempting to enforce an entirely separate contract between it and Skinner.

[7] Natures Way does not argue that it has "a conditional right to intervene by a federal statute[,]" nor is the Court aware of any such right.  Fed. R. Civ. P. 24(b)(A).

5239249, at *2 (S.D. Ala. Dec. 15, 2010) (Steele, C.J.) (citing generally *Mt. Hawley Ins.*).

In *Mt. Hawley*, the insurer's declaratory judgment action asserted that the insureds' "refusal to notify Mt. Hawley of the wrongful death action and refusal to cooperate in their defense against the wrongful death action had so prejudiced Mt. Hawley that coverage under the Mt. Hawley policy had been waived." 425 F.3d at 1310. The would-be intervenor, the personal representative of the decedent, "argued that, contrary to Mt. Hawley's assertions, [the insureds] were cooperating in the defense of the wrongful death suit" and "that Rigaud's counsel had notified Mt. Hawley of the wrongful death suit, and thus, Mt. Hawley could not be prejudiced by lack of notice." *Id.*

In affirming the district court's denial of permissive intervention, the Eleventh Circuit stated:

> The lack of cooperation that Mt. Hawley asserts in the declaratory judgment action is irrelevant to the issue of fault in the wrongful death action. Specifically, the primary issue in the declaratory judgment action is whether Mt. Hawley owes insurance coverage to Muria International and Sandy Lake Properties under the insurance agreement. The issue of insurance coverage is unrelated to the issue of fault in the wrongful death action. Further, we do not see how Rigaud's intervention will help resolve the issue of whether Muria International and Sandy Lake Properties are entitled to insurance coverage pursuant to a policy with Mt. Hawley. Thus, the district court did not abuse its discretion in denying Rigaud's motion for permissive intervention.

*Id.* at 1312.

In its declaratory judgment counterclaim, Atlantic cites the following policy exclusions as grounds for denying coverage to Skinner:

III. Exclusions from Coverage

This insurance does not apply to loss, damage, liability, or expense directly or indirectly caused by, or contributed to or resulting from:

A. Wear and tear, gradual deterioration, rust, corrosion, dampness of atmosphere, freezing or extremes of temperature;

B. An original defect in the property;

C. Mechanical or electrical breakdown or failure…

(Doc. 2 at 7-8). In a letter to Skinner denying coverage (which Skinner has attached to its Complaint), Atlantic, citing to this provision of the policy, stated: "This policy provides coverage for fortuitous or accidental damages to the leased crane but excludes damages resulting from mechanical or electrical breakdown or failure." (Doc. 1-1 at 8). In the report of the parties' planning meeting under Federal Rule of Civil Procedure 26(f), Atlantic asserts that "[t]he crane was in poor repair prior to the loss resulting in the alleged damage." (Doc. 15 at 3).

For its part, Skinner asserts that the crane was damaged when one of its employees "accidentally failed to secure the boom before exiting the crane," resulting in "the boom collaps[ing] and sustaining damage." (Doc. 1-1 at 3-4). "In other words," according to Skinner, "the fall was not due to a mechanical error, but by an event that would be covered under the policy in question." (Doc. 15 at 2).

Natures Way's charter agreement with Skinner provides: "Throughout the Charter Period, Charterer shall, at its sole cost and expense, maintain the Barges in accordance with good commercial marine maintenance practices and shall maintain and preserve the Barges, in as good condition, working order and repair as when first delivered to Charterer for service hereunder, ordinary wear and tear (as

11

defined in Section 14) only excepted." (Doc. 20-1 at 15).   Section 14 of the agreement defines "ordinary wear and tear" as "the wear and tear which would normally be expected to occur during the careful, proper and prudent use of the Barges over the period of time involved, assuming proper maintenance and compliance with the other terms of this Charter." (*Id.* at 17).

It appears, then, that the cause of the damage to the crane is a question of fact common to both whether Skinner must pay Natures Way for the damage under the charter agreement and whether Atlantic owes coverage for the damage under its policy with Skinner.   Thus, Natures Way has sufficiently carried its burden under Rule 24(b)(1)(B) in showing that its claim in intervention against Skinner shares with a common question of fact with the main action. *Compare Travelers Indem. Co. v. Bastianelli*, 250 F.R.D. 82, 85-86 (D. Mass. 2008) ("Given the present posture of this litigation, the Intervenors have an interest in establishing under whose direction the truck was being driven at the time of the accident. This fact will affect liability in the state court action as well as the availability of insurance coverage… [T]his court finds that the Intervenors have satisfied the requirements of Fed. R. Civ. P. 24(b) and have shown that their participation as defendants in this action will promote the full development of the underlying factual issues as well as the just and equitable adjudication of the pending coverage dispute.") *with Canal Indem.*, 2011 WL 335166, at *3 ("Whether the individual was Buena Vista's employee or an independent contractor certainly affects Buena Vista's liability to Roberta, but Livingston has not attempted to show that his status is a question

12

relevant to whether Livingston is liable to Roberta or to whether Buena Vista owes Livingston indemnity.   On this record, the Court must conclude that the independent contractor issue is irrelevant to Livingston's claim or defense and thus inadequate as a matter of law to support permissive intervention." (footnote omitted)).

A motion to intervene, whether under Rule 24(a) or Rule 24(b), must be "timely."  As to this issue, the Eleventh Circuit has held:

> In determining whether a motion to intervene was timely, we consider (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely. *Chiles*, 865 F.2d at 1213. However, we must also keep in mind that "[t]imeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id.* (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

*Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d at 1259.  Rule 24(b) also requires that a court "consider whether [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Neither of the original parties have opposed Natures Way's motion, and considering the record, the Court finds no reason to believe that permissive intervention will cause undue delay or prejudice to the original parties, or that the motion is untimely.  *Cf. Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d at 1259-60

("Georgia contends that SeFPC's motion is untimely because SeFPC knew of the litigation and had copies of the papers in the case since February 2001, and did not move to intervene until August 2001, after discovery was largely complete and the parties had agreed upon a schedule for the briefing of the case. We do not believe that a delay of six months in itself constitutes untimeliness. *See* [*Chiles*, 865 F.2d at 1213] (finding motion timely when filed seven months after the case was filed). Although in *Chiles* we observed discovery had not yet begun, in this case SeFPC's intervention did not delay the proceedings and the court had yet to take significant action. Therefore, we do not believe that the existing parties will be prejudiced by SeFPC's intervention, and SeFPC would be prejudiced if its motion is denied. *See id.* Accordingly, we find that its motion to intervene was timely.").[8]

Accordingly, the Court finds that Natures Way's motion to intervene (Doc. 20) is due to be **GRANTED** as to its request for permissive intervention under Rule 24(b).

## IV.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that Natures Way's Motion for Leave to Intervene (Doc. 20) is **GRANTED** as to its request for

---

[8] Natures Way's Complaint in Intervention also appears to allege an independent basis for subject matter under 28 U.S.C. § 1333, in that it asserts claims for breach of a maritime charter agreement.  *See Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1320 (11th Cir. 1999) ("Sea Lane's allegations of defendants' breaches of the charter agreement compose the gravamen of the complaint. The complaint therefore falls within the district court's admiralty jurisdiction. See *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S. Ct. 886, 890, 6 L. Ed. 2d 56 (1961) ('Without doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction.'); *Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54, 55 (5th Cir. 1970) ('[T]he charter provisions of the contract are maritime in nature ... and within the admiralty jurisdiction of the district court.').'" (footnote omitted)).

permissive intervention under Rule 24(b) and **DENIED** as to its request for intervention of right under Rule 24(a).   Natures Way shall file and serve its Complaint in Intervention no later than **<u>Tuesday, April 7, 2015</u>**.

> **DONE** and **ORDERED** this the 31st day of March 2015.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
